UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EKLECCO NEWCO LLC and EKLECCO L.L.C.,

                    Plaintiffs,

   -against-

TOWN OF CLARKSTOWN, TOWN BOARD OF THE
TOWN OF CLARKSTOWN, THE TOWN OF
CLARKSTOWN PLANNING BOARD, and GEORGE
HOEHMANN, as Supervisor of the Town of
Clarkstown,

                    Defendants.

No. 16-CV-6492 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs EklecCo NewCo LLC and EklecCo L.L.C, (collectively, "EklecCo"), bring this

action pursuant to 42 U.S.C. § 1983 and New York state law against the Town of Clarkstown

("Town"), the Clarkstown Town Board ("Town Board"), the Clarkstown Planning Board

("Planning Board"), and the Supervisor of the Town of Clarkstown, George Hoehmann.

Plaintiffs allege that Defendants coerced them into surrendering certain constitutional rights in

exchange for the discontinuance and conveyance of public roads that were necessary for the

continued development of the Palisades Center shopping mall and discriminated against them in

violation of the Fourteenth Amendment Equal Protection Clause.  Additionally, Plaintiffs allege

that Defendants violated their Fourteenth Amendment equal protection rights.

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended

Complaint pursuant to 12(b)(6) for failure to state a claim and 12(b)(1), for lack of subject-matter

jurisdiction.  (ECF No. 67.)

For the following reasons, Defendants' motion to dismiss is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/2/19

# BACKGROUND

## I.     Factual Background

The Court assumes familiarity with the facts in this matter but summarizes the facts below to accurately reflect the allegations in the Second Amended Complaint ("SAC"). For the purposes of this motion, the Court accepts the facts in the SAC as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 1985, Plaintiffs' predecessor in interest[1] began amassing parcels of land located within the Town of Clarkstown ("Clarkstown" or "Town") for the purpose of constructing a regional shopping center. (Second Amended Compl. ("SAC") ¶ 37, ECF No. 56.)

On June 12, 1987, Plaintiffs petitioned the Town Board to rezone several of its recently-acquired parcels of land to a major regional shopping district. (*Id.* ¶ 40.) Over one year later, in December 1988, the Town Board passed a resolution and amended the Town's zoning map to "permit the construction of a regional shopping center to be known as the 'Palisades Center' " on Plaintiffs' land ("Rezoning Resolution"). (*Id.* ¶ 42.)

Plaintiffs applied to the Planning Board for approval of a preliminary site plan in May 1989 which included 875,000 square feet of gross leasable area ("GLA"). (*Id.* ¶ 43.) The Planning Board granted EklecCo preliminary site plan approval and permission to begin excavation and rock removal on February 28, 1990. (*Id.* ¶ 44.) Plaintiffs also sought permission to construct a "ring road" to connect the mall to surrounding roadways. (*Id.* ¶ 46.) To construct said road, the New York State Department of Transportation required that Plaintiffs obtain an expression of intent from the Town Board that the Town intended to accept public dedication of

---

[1] EklecCo and its predecessors in interest will be collectively referred to as "EklecCo" or Plaintiffs for the purposes of this motion.

a portion of that "ring road," and certain roadways connecting the ring road to other major thoroughfares. (*Id.*)

On January 22, 1991, the Town Board passed a resolution expressing its intent to accept dedication of such roads, provided that Plaintiffs agree to construct and maintain them at their sole expense and to post a bond or letter of credit. (*Id.* ¶ 47.)

Plaintiffs decided to modify their initial plan, and, on March 9, 1993, they applied to the Planning Board for approval of those modifications. (*Id.* ¶ 48.) The Town Board granted final site approval on June 23, 1993. (*Id.* ¶ 51.) In December 1994, Plaintiffs again modified their plan and applied to the Planning Board for preliminary approval to increase the size of the Palisades Center to include 1.2 million square feet of GLA. (*Id.* ¶ 52.) The Town Board issued a negative declaration pursuant to the New York State Environmental Quality and Review Act ("SEQRA"), finding that Plaintiffs' planned development was consistent with the Town's zoning laws and did not have adverse environmental consequences, and then issued a resolution granting final site plan approval. (*Id.* ¶¶ 53 – 55.)

Approximately a year after the previous expansion, in December of 1995, Plaintiffs filed another application to the Planning Board for approval of an increase in size, this time from 1.2 million square feet to 1.854 million square feet of GLA. (*Id.* ¶ 56.) The Planning Board granted preliminary site plan approval on February 28, 1996, subject to certain conditions. (*Id.* ¶ 57.) On March 27, 1996, however, the Planning Board issued an "Addendum" to its previous approval and imposed additional conditions to be satisfied by Plaintiffs prior to final site plan approval, one of which requiring Plaintiffs to "secure Town Board approval for discontinuance of Virginia Avenue and Besso Street," ("Town Roads") as portions of those roads would become part of the building footprint of the Palisades Center under the proposed expansion. (*Id.* ¶¶ 58 – 59, 100 &

128.)

On April 5, 1996, the Office of the Building Inspector for the Town ("Building Department") issued a building permit granting Plaintiffs authorization to proceed with the construction of the foundation of the mall. (*Id.* ¶ 61.)  Then, on April 24, 1996, the Planning Board passed a resolution granting final site plan approval for the Palisades Center, to include 1.854 million square feet of GLA ("Final Site Plan Approval"), subject to certain conditions one of which being that Plaintiffs secure the Town Board approval for the discontinuance of the Town Roads.  (*Id.* ¶ 62 − 65.)  At that time, the Town Board intended to discontinue and abandon the Town Roads to Plaintiffs to allow the construction of the Palisades Center to proceed at 1.854 million square feet of GLA. (*Id.* ¶ 67.)

The Town Board, on May 24, 1996, authorized the Town Supervisor to, through a "Shell Permit Agreement" with Plaintiffs, permit the Town Building Inspector to issue a shell building permit for the Palisades Center in exchange for certain payments and other assurances. (*Id.* ¶ 68.)

Plaintiffs allege that at the time the Town Board authorized the Shell Permit Agreement, it knew that Plaintiffs intended to apply to expand the Palisades Center to 3.05 million square feet of GLA. (*Id.* ¶ 70.)  Moreover, the Town knew that a $50,000,000.00 construction loan Plaintiffs hoped to secure required the issuance of the building permit.  (*Id.* ¶ 72.)  Plaintiffs depended on this loan to proceed with their construction activities.  (*Id.*)  The Building Department issued a building permit to Plaintiffs the same day the Shell Permit Agreement was executed, thereby permitting construction to begin. (*Id.* ¶ 73.)

On July 17, 1996, EklecCo formally applied to the Planning Board to amend the Final Site Approval to increase the size of the Palisades Center from 1.854 million square feet of GLA to 3.05 million square feet of GLA by adding floors rather than expanding the existing footprint

of the building.  (*Id. ¶* 74.)  A vocal minority opposed any increase in the size of the Palisades Center beyond the already approved 1.854 million square feet of GLA. (*Id. ¶* 79.)

All the while, Plaintiffs still needed to secure the Town Roads.  In August of 1996, the Town Supervisor assured Plaintiffs that the Town would discontinue and abandon the Town Roads, which were known to be prone to flooding, to Plaintiffs. (*Id. ¶¶* 81 & 88.)  By September 19, 1996, EklecCo had substantially complied with the other conditions set forth in the Final Site Plan and had applied for discontinuance and abandonment of the Town Roads. (*Id. ¶* 82.)

The Town Board convened on October 8, 1996 to decide whether to consent to discontinue and abandon the Town Roads and sell them to Plaintiffs.  (*Id. ¶* 94.)  At that time, EklecCo already had the Planning Board's approval to build the Palisades Center at 1.854 million square feet, subject to the discontinuance of the Town Roads, and Plaintiff's application for the expansion to 3.05 million square feet of GLA was pending before the Planning Board. (*Id. ¶* 95 & 97.)  However, Plaintiffs contend that the Town Board used the expected formality of its vote on discontinuing the Town Roads to block the already approved development of the Palisades Center at 1.854 million square feet of the GLA by imposing a number of restrictions and conditions on the Palisades Center's construction. (*Id. ¶* 98.)

On that date, the Town Board passed Resolution 909-1996.  (*Id. ¶* 99); (Defs.' Mot. to Dismiss Ex. P ("Roads Resolution"), ECF No. 67-17.)  Under the Roads Resolution, upon the acceptance of the substitute roads to be built and maintained by Plaintiffs, the Town Roads would be abandoned and sold to Plaintiffs, subject to certain terms and conditions. (*Id. ¶¶* 103 – 105.)  Specifically, the Roads Resolution required that Plaintiffs pay a $1.5 million purchase price for the Town Roads and adhere to the following, among other terms:

    (a)  EklecCo's withdrawal of the Palisades Center Expansion Application;
    (b)  EklecCo, waiving releasing and covenanting not to sue the Town, the Town

Board, or any town employees, agents, or representatives "with respect to or in connection with any action taken . . . up to and including the adoption of [the] Resolution;"

(c) EklecCo "covenanting and agreeing to file an Amendment to the Covenants filed in compliance with the 1988 Rezoning Resolution precluding any further increase in the size of the Palisades Center in excess of the 1.85 million square feet of GLA without prior consent of the Town Board, the application for which, in no event, shall occur prior to twenty-four (24) months after the Palisades Center is open and operating at 90% occupancy;"

(d) EklecCo "covenanting and executing an easement in favor of the Town restricting all real property owned by EklecCo within the Site Plan, precluding any further increase in the size of the Palisades Center in excess of 1.854 million of square feet GLA which restriction shall bind EklecCo and its successors, and which shall be a covenant running with the land for the benefit of the Town of Clarkstown;"

(e) EklecCo agreeing "that any modifications or release of the covenant cannot be made prior to twenty-four (24) months after the Palisades Center is open and operating 90% occupancy and any such release or modification shall be deemed a transfer of the real property interests of the Town pursuant to Town Law § 64(2), and thus be subject to permissive referendum;"

(f) EklecCo agreeing "to enter into a Project Labor Agreement ("PLA") with the Building and Construction Trades Council of Rockland County for a labor agreement . . . ."

(*Id.* ¶ 105.)

By the time the Roads Resolution passed, Plaintiffs had already spent and committed tens of millions of dollars in the construction of the Palisades Center. (*Id.* ¶¶ 113 & 118.) In addition to the Planning Board approvals, EklecCo relied upon approvals from the Building Department and the Town Board, which permitted EklecCo to begin construction of the building shell of the Palisades Center. (*Id.* ¶ 116.) The Town Board was aware of EklecCo's significant investment in developing and constructing the Palisades Center. (*Id.* ¶ 120.)

In compliance with the terms of the Roads Resolution, Plaintiffs withdrew their application to the Planning Board for approval of the expansion to 3.05 million square feet of GLA. (*Id.* ¶ 117.)

After imposing the Roads Resolution on Plaintiffs, the Town sold two roads to another shopping center owner, FB Nanuet LLC ("FB") in 1998 and 1999 and to Tilcon New York, Inc

in 2015 without any restrictions on future development.  (*Id.* ¶¶ 319 – 21 & Ex. BB.)

Shortly thereafter, on December 9, 1996, EklecCo and the Town entered into a "Restrictive Covenant and Negative Easement" ("Restrictive Covenant").  (*Id.* ¶ 124.)  The language of the Restrictive Covenant "attempt[ed] to attach the GLA cap in the Roads Resolution to certain Town-owned lands" and stated that it was an "interest in real property in the nature of an easement" that would last "in perpetuity."  (*Id.* ¶ 126.)  The Restrictive Covenant further specified that it would "run with the land," and "be binding upon EklecCo and all future owners of the Project Property."  (*Id.* ¶ 132.)  The Supervisor executed a contract for the sale of the Town Roads with EklecCo on January 29, 1997. (*Id.* ¶ 139.)

On January 12, 1998, the chairman of the Planning Board endorsed an amended final site plan for a 1.854-million-square-foot mall, which included an amended "Note Z."  (*Id.* ¶¶ 148 – 50.)  Note Z made the leasing of additional space above a cap subject to Planning Board approval following an environmental assessment and stated that an application for such approval "shall not be made until compliance with the applicable provisions of [the Roads Resolution]." (*Id.* 150.)

In 2002, Plaintiffs applied to the Town Board for release of the Restrictive Covenant so that Plaintiffs could expand the GLA of the Palisades Center within the existing building shell. (*Id.* ¶ 154.)  In response, the Town Board enacted resolutions authorizing release of the Restrictive Covenant, provided that the release was approved by a voter referendum in the general election on November 5, 2002.  (*Id.* ¶¶ 155 – 56.)  The voters rejected the proposal to release the Restrictive Covenant.  (*Id*. ¶ 159.)

From 2014 through 2016, Plaintiffs repeatedly attempted, without success, to obtain a release of the Restrictive Covenant from the Town.  (*Id.* ¶ 169.)  The Town refused to release the

Restrictive Covenant without "major concessions" from Plaintiffs, including millions of dollars of payments to the Town's general fund and submission to a public referendum to approve a release. (*Id.* ¶ 170 – 71.)

Plaintiffs continue to be subject to the same GLA limit, and they cannot seek approval from the Planning Board to build or occupy additional GLA outside the existing building shell. They are subjected to this limitation even though such expansion is otherwise permitted under the Town's zoning laws. (*Id.* ¶¶ 161 – 65 & 172.) Other commercial property owners in the Town do not face the same limits. (*Id.* ¶ 166.) Plaintiffs offer the owner of The Shops at Nanuet ("The Shops"), Palisades Center's direct competitor, as an example, and note that The Shops may, and did in 2012 and 2013, apply to the Planning Board to redevelop its property without any preconditions. (*Id.* ¶¶ 167 – 68.)

## II.     Procedural Background

Plaintiffs commenced the present action on August 16, 2016 (*see* Compl., ECF No. 1) and filed a First Amended Complaint on September 2, 2016. (First Amended Compl. ("FAC"), ECF No. 18.) Defendants filed a motion to dismiss the FAC on May 12, 2017. (ECF No. 41.)

On June 18, 2018, the Court granted Defendants' motion to dismiss. ("2018 Opinion," ECF No. 55.) The Court found that Plaintiffs' Fifth Amendment Takings Clause claims were time barred and that the continuing violation doctrine did not apply because Plaintiffs were challenging "the very same conditions that were imposed nearly two decades ago and enforced as early as 2002." *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at *9 – 10 (S.D.N.Y. June 18, 2018). Additionally, the Court dismissed Plaintiffs' Fourteenth Amendment Equal Protection Clause claim, but without prejudice to renew, because Plaintiffs failed to identify any similarly situated entity. *Id.* at *12. The Court did not address

the timeliness of this claim.  Finally, the Court determined that Plaintiffs failed to state an independent First Amendment claim in the FAC.  *Id.* at *7 n. 4.  The Court did not address Plaintiff's state law claims because "Plaintiffs [had] not yet adequately pled a federal cause of action."  *Id.* at *12.  Plaintiffs were granted leave to file a SAC in accordance with the 2018 Opinion.  *Id.* at *13.

Plaintiffs filed their SAC on July 13, 2018.  The SAC includes twenty-four separate causes of action which can be summarized as follows:  (1) unconstitutional exactions in violation of the Fifth Amendment and Article I, Section 7 of the New York Constitution; (2) unconstitutional exactions in violation of the First Amendment and Article I, Section 9 of the New York Constitution; (3) restriction of Plaintiffs' right to petition and imposition of unconstitutional conditions in violation of the First Amendment and Article I of the New York Constitution; (4) violation of the Fourteenth Amendment's Equal Protection Clause and of equal protection under the New York Constitution; (5) *ultra vires* action in violation of New York Highway laws §§ 171 and 212-a; (6) usurpation of the Planning Board's authority by the Town Board; (7) *de facto* zoning in violation of New York Town Law §§ 262 & 264 – 65; (8) improper enforcement of the Restrictive Covenant after it was extinguished under the merger doctrine; (9) conduction of an improper referendum on whether to release Plaintiffs from the Restrictive Covenant and Note Z; and (10) *ultra vires* attempts by the Town Board to bind the decision making ability of future town boards.

## LEGAL STANDARDS

When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1).  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011).  "A plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). The expiration of the statute of limitations may be grounds for dismissal under Rule 12(b)(1). *See Adams v. Crystal City Marriott Hotel*, No. 02-CV-10258(PKL), 2004 WL 744489, at *5 (S.D.N.Y. Apr. 6, 2004) ("Courts often, in fact, do not distinguish between Rules 12(b)(1) and 12(b)(6) when ruling upon a motion to dismiss for failure to comply with the statute of limitations, but simply discuss the motion as if it is properly brought under both rules.").

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level' " to move beyond a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor. *Iqbal*, 556 U.S. at 678. However, the court is " 'not bound to accept as true a legal

conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## DISCUSSION

Defendants move to dismiss Plaintiffs' SAC on several grounds: (1) expiration of the statute of limitations; (2) Plaintiffs' execution of a valid release of their claims; (3) failure to state a claim; and (4) the continued enforceability of the Restrictive Covenant. As a threshold matter, the Court notes that Plaintiffs' Fifth Amendment claims were previously dismissed by this Court because they fell outside of the statute of limitations.[2] Therefore, the Court will not consider those claims. As it did in its 2018 Opinion, the Court addresses Plaintiffs' federal and state law claims separately.

## I. Federal law claims

### A. Statute of limitations[3]

---

[2] Plaintiffs do not oppose Defendants' statement that the Court has already dismissed their Fifth Amendment claims with prejudice. (Pls.' Mem. of Law in Opp'n to Defs.' Mot to Dismiss the Second Am. Compl. ("Pls.' Opp'n") p. 1, ECF No. 71.) Plaintiffs note, however, that they include the Fifth Amendment claims in their SAC nonetheless to preserve the issue for appeal. (*Id.* pp. 1 - 2 & n.2.)

[3] Defendants seem to argue that this Court held that any claims seeking wholesale invalidation of the Town's actions fall outside of the statute of limitations. This argument is an overly broad interpretation. The Court's holding in its

Plaintiffs seek relief under 42 U.S.C. § 1983 for alleged violations of the First and the Fourteenth Amendments.

There is no independent statute of limitations set by § 1983 and so courts apply the statute of limitations for personal injury actions under state law. *See Owens v. Okure*, 488 U.S. 235, 249 – 51 (1989); *Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013). Because New York law provides for a three-year statute of limitations for personal injury claims, N.Y.C.P.L.R § 214(5), the applicable statute of limitations for § 1983 claims in New York is three years. This "three-year limitations period applies regardless of whether Plaintiff seeks legal, equitable, or declaratory relief." *Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). Plaintiffs' filed this action on August 16, 2016 and, therefore, claims from before August 16, 2013 are outside of the statute of limitations.

Unlike the determination of the length of the statutory period, the accrual of § 1983 claims is a question of federal law. *See Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). According to the Supreme Court, it is " 'the standard rule that [accrual occurs] when the plaintiff has a 'complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.' " *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). Typically, once a plaintiff "knows or has reason to know of the injury which is the basis of his action," the statute of limitations begins. *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (internal quotations marks omitted) (quoting *Singleton v. New York*, 632 F.2d 185,

---

2018 Opinion was limited to Plaintiff's Fifth Amendment Takings Clause claims. The Court held that Plaintiffs' Takings Clause claims accrued at the time of the adoption of the limitations on the Palisades Center because that was when Plaintiffs were allegedly deprived of their property interest. *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at \*9 (S.D.N.Y. June 18, 2018). The takings claims involved "a single fatal blow," the conditions on the discontinuance of the Town Roads and the limitation on the GLA, and therefore those claims accrued when the conditions were imposed in the 1990s, well before this action. *Id.* at \*10. The Court did not address the accrual of claims under the First or the Fourteenth Amendments.

191 (2d Cir. 1980)). However, as noted in the 2018 Opinion, "[t]he continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.' " *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Harris v. City of New York,* 186 F.3d 243, 248 (2d Cir. 1999)). That doctrine is limited "to claims composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks omitted).

### 1. First Amendment claims

Plaintiffs allege that Defendants violated their First Amendment rights by imposing certain conditions on the discontinuance of the Town Roads and by enacting and enforcing the Restrictive Covenant and Note Z. (SAC ¶¶ 239 – 95.) According to Plaintiffs, these claims are timely under the continuing violations doctrine and because Defendants violated their First Amendment rights in 2014 and 2016 by repeatedly refusing to grant Plaintiffs release from the restrictions.

The Second Circuit has not yet directly addressed whether the statute of limitations for a § 1983 claim can bar a facial challenge to legislation brought under the First Amendment, and the issue has not been resolved by other circuit courts. However, in *Maldonado v. Harris*, the Ninth Circuit "join[ed] the Fourth Circuit in expressing serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations." 370 F.3d 945, 955 (9th Cir. 2004) (citing *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir. 1991)).

Comparison to the application of the statute of limitations for a § 1983 takings claim is instructive in determining how it should be applied to facial challenges under the First Amendment. As this Court previously recognized, a facial challenge to a rule based on the Fifth Amendment Takings Clause accrues upon adoption because that claim is "distinct from other

constitutional challenges to statutes or regulations where the harm stems from the challenged statute's continued enforcement or application." *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at *9 (S.D.N.Y. June 18, 2018). Unlike government action under the First Amendment, the harm from a takings claim occurs when a plaintiff is deprived of a property interest. *Id.*; *see Hillcrest Prop., LLC v. Pasco Cty.*, 754 F.3d 1279, 1282 (11th Cir. 2014). The harm Plaintiffs allege in their First Amendment claims occurs as long as the Town enactments allegedly limit Plaintiffs' exercise of their First Amendment rights. Because of the ongoing nature of the harm caused by such legislation, the burden on Plaintiff's First Amendment rights, the Court holds that the statute of limitations for facial challenges to legislation based on the First Amendment does not accrue until the statute is repealed or otherwise invalidated. *Compare JCG v. Ercole*, No. 11-CV-6844(CM)(JLC), 2014 WL 1630815, at *10 (S.D.N.Y. Apr. 24, 2014) (citing cases in which courts in the Second Circuit found the continuing violations doctrine to apply to alleged violations of the First Amendment); *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1090 (C.D. Cal. 2008) ("The statute of limitations does not apply to the facial challenge of a statute that infringes First Amendment freedoms as such a statute inflicts a continuing harm."), *with Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 732 (2d Cir. 2013) (holding that the plaintiff could not rely on the continuing violation doctrine for his First Amendment retaliation claims because each alleged retaliatory act was a discrete act and not an " 'ongoing policy of retaliation' ").

Based on the face of the SAC, the restrictions that allegedly violate the First Amendment continue to be in effect and to inflict harm. (SAC ¶¶ 259, 262, 273, 281, 284 & 294.) Accordingly, Plaintiffs' First Amendment claims fall within the statute of limitations.[4]

---

[4] Even if the Court did not find that there was continuing harm, Plaintiffs also claim that the Town enactments which allegedly violated the First Amendment have been enforced within the statutory period. Plaintiffs

## 2. Fourteenth Amendment Equal Protection Clause claims

According to Plaintiffs, Defendants violated the Equal Protections Clause by subjecting

Plaintiffs to restrictions that they did not apply to any other commercial property owner in the

Town.  Further, Plaintiffs allege that these claims are timely because of the continuing violation

doctrine and because Defendants violated the Equal Protections Clause within the statute of

limitations period.[5]  (SAC ¶¶ 296 – 374); (Pls.' Mem. of Law in Opp'n to Defs.' Mot to Dismiss

the Second Am. Compl. ("Pls.' Opp'n") p. 26, ECF No. 71.)

An Equal Protection Clause claim accrues "when the plaintiff knew or should have

known of the disparate treatment."  *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir.

2013).  "Where a plaintiff challenges a 'continuous practice and policy of discrimination,

however, the commencement of the statute of limitations period may be delayed until the last

discriminatory act in furtherance of it.' "  *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 703

(2d Cir. 1994)).  To trigger a delay of the beginning of the statute of limitations, the complaint

---

claim that when they asked for a release from the Restrictive Covenant in 2014 "and continuing through 2016," the Town refused to release Plaintiffs unless they agreed to pay millions of dollars and make concessions which Plaintiffs allege was an exaction that violated the First Amendment. By refusing to remove the purportedly unconstitutional restrictions in 2014 through 2016, Defendants enforced the challenged legislation and allegedly burdened Plaintiffs' First Amendment rights within the statute of limitations.  *See Maldonado v. Harris*, 370 F.3d 945, 956 (9th Cir. 2004) (holding that the plaintiff's First Amendment facial challenge occurred within the statute of limitations because the statute was enforced against the plaintiff within the statutory period).  As discussed herein, this is distinct from facial challenges based on Fifth Amendment takings, where the harm occurs at the time of enactment.

[5] The cases Plaintiffs cite to as support for their argument that their equal protections claims are within the statute of limitations are not persuasive when applied to the facts before the Court or compared to other caselaw. Moreover, these cases are not binding precedent on this Court.  In *South Lyme Property Owners Ass'n, Inc. v. Town of Old Lyme*, the Connecticut district court found that the plaintiff's §1983 claims were not time-barred both because, unlike here, the defendants did not timely assert their statute of limitations defense and because a statute of limitations defense would have been futile. 539 F. Supp. 2d 547, 557 (D. Conn. 2008).  In *Town of Southold v. Town of East Hampton,* also cited by Plaintiffs, the court applied the continuing violations doctrine and found that the plaintiff's claim that a law violated the Equal Protection Clause was timely. 406 F. Supp. 2d 227, 238 (E.D.N.Y. 2005). While the Court certainly considers other district court decisions, it is not required to follow these decisions because district court decisions do not constitute binding precedent on other district courts. *Word v. Croce*, No. 00-CV-6496(SAS), 2001 WL 755394, at *4 n.7 (S.D.N.Y. July 5, 2001) (citing *IBM Credit Corp. v. United Home for Aged Hebrews*, 848 F. Supp. 495, 497 (S.D.N.Y. 1994)).

must include allegations of both "the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). Simply stating that the plaintiff was subjected to unfavorable treatment during the limitations period does not amount to an allegation of a non-time barred act taken in furtherance of a policy of discrimination. *See Fahs Constr. Grp.*, 725 F.3d at 292.

In *Fahs Construction Group*, the Second Circuit affirmed the district court's holding that the plaintiff's equal protection claim was time barred. *Id.* at 292 – 93. There, the plaintiff filed suit in 2010 to seek recovery under § 1983 for violations of the Equal Protection Clause, but his allegations of discrimination "occurred principally between 2003 and 2005, well outside the three-year limitations period." *Id.* at 292. According to the court, the events outside of the three-year statute of limitations could not support an equal protection claim unless the plaintiff "also alleged 'non-time barred acts taken in furtherance of [the] policy' of discrimination," which the plaintiff failed to do. *Id.* It was not enough that the plaintiff alleged that the defendant refused to close out its contract with the plaintiff within the three-year limitations period because that allegation "says nothing" about the way the defendant treated a similarly situated entity or person during the statute of limitations. *Id.* at 292 & n.3.

Here, Plaintiffs filed suit in August 2016, but their allegations of discrimination occurred primarily before August 2013. Although Plaintiffs claim that The Shops applied, successfully, to Defendants to redevelop its property without preconditions in 2012 and 2013, the SAC and documents referenced in the SAC indicate that these occurrences fell outside of the statute of limitations.[6] Any favorable treatment to The Shops in 2012 is not within the statutory limitations

---

[6] "[I]t is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); (*see* Defs.' Mot. to Dismiss Exs. MM & NN, ECF No. 67.)

period, as the original complaint was filed on August 16, 2016. Moreover, the resolutions Plaintiffs refer to in the SAC in which Defendants allowed The Shops to redevelop without any precondition, (SAC ¶¶ 168 & 313), were passed on January 15, 2013 and March 5, 2013, outside of the limitations period. Plaintiffs allege that the Town sold FB town roads without any restriction on future development in 1998 and 1999, well before the statutory period. Additionally, Plaintiffs state that the Town Board abandoned roads without restricting future development or requiring a permissive referendum "in multiple other instances," and attach a list of resolutions and petitioner names which includes a resolution dated February 3, 2015 for Tilcon New York, Inc. However, the SAC contains no allegations that Tilcon was similar in any way to the Palisades Center.[7] Listing an entity in an exhibit, without any allegations to indicate that the entity was in any way similar to Plaintiffs, is not an allegation of a non-time barred act taken in furtherance of a policy of discrimination. *See Perrie v. Middletown Zoning Bd. of Appeals*, No. 13-CV-1667(AVC), 2014 WL 1281447, at *4 (D. Conn. Mar. 27, 2014); *Banushi v. City of New York*, No. 05-CV-1805(CPS), 2006 WL 2811898, at *3 (E.D.N.Y. Sept. 28, 2006).

While Plaintiffs allege that Defendants refused to release them from the restrictions on the property from 2014 through 2016, as the Second Circuit pointed out in *Fahs*, allegations that Plaintiffs were subjected to unfavorable treatment within the statutory period is not an allegation that the action was taken in furtherance of a policy of discrimination. When describing Defendants' refusal to release Plaintiffs from the restrictions "[i]n spite of EklecCo's repeated efforts between 2014 and 2016," the SAC notes that none of the restrictions placed on Plaintiffs

---

[7] This contrasts with FB, an entity identified as the owner of a shopping center seeking to develop on property occupied by town roads. (SAC ¶¶ 319 – 20.)

were placed on other commercial property owners including The Shops. (SAC ¶ 16.)  This is a hollow attempt to create an impression of a non-time barred act taken in furtherance of ongoing policy of discrimination; the allegation "says nothing" about the way the defendant treated a similarly situated entity within the statute of limitations period.  *See Fahs Constr. Grp.*, 725 F.3d at 292 & n.3.

There are no facts in the SAC that indicate that Defendants violated the Equal Protections Clause in the three years prior to the filing of this suit or that Defendants took a non-time-barred act in furtherance of a policy to discriminate against Plaintiffs.  Moreover, making all reasonable inferences in Plaintiffs' favor, Plaintiffs do not allege that Defendants perpetuated an ongoing policy of discrimination, only that they treated Plaintiffs differently.  (SAC ¶¶ 159, 166 & 170.) Based on the face of the SAC, Plaintiffs do not allege that Defendants violated the Equal Protections Clause within the statutory period or that Defendants took non-time-barred acts in furtherance of a policy to discriminate against Plaintiffs.  Therefore, the Equal Protection Clause claims are dismissed as untimely.

### B.  Release of claims provision in the Roads Resolution

Defendants allege that Plaintiffs executed a valid release of their claims through the Roads Resolution, which provided that Plaintiffs "forever waiv[ed]," released, and agreed not to sue, the Town, Town Board, and each of its members including all town employees "with respect to or in connection with any action taken (as well as any claimed failure to act) up to and including the adoption of this resolution."  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. ("Defs.' Mot."), pp. 11 – 12, ECF No. 68); (Roads Resolution.)

A facially clear and unambiguous release, knowingly and voluntarily entered into, is generally enforceable.  *Berman v. Parco*, 986 F. Supp. 195, 208 (S.D.N.Y. 1997).  "This

standard applies to waivers of constitutional rights." *Miller v. N.Y. City Dep't of Educ.*, 71 F. Supp. 3d 376, 380 (S.D.N.Y. 2014) (citing *Bormann v. AT & T Commc'n, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989)). Waiver of constitutional rights cannot be presumed nor lightly inferred. *Id.* However, a release may be voided due to economic duress "where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of his free will." *Davis & Assoc., Inc. v. Health Mgmt. Serv., Inc.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001) (quoting *Worth Constr. Co., Inc. v. I.T.R.I. Masonry Corp.*, No. 98-CV-2536(CM), 2001 WL 209924, at *5 (S.D.N.Y. Feb. 21, 2001) (internal quotation marks omitted). The burden of showing economic duress sufficient to void a release agreement is heavy. *VKK Corp. v. National Football League*, 244 F.3d 114, 123 (2d Cir. 2001).

Here, Plaintiffs allege that they only agreed to the waiver because they could not complete the Palisades Center without Defendants' consent, and that the waiver itself was an unconstitutional condition. (SAC ¶¶ 12, 105 & 122.) Defendants conditioned their discontinuation and sale of the Town Roads, which Plaintiffs needed in order to continue with the project, on Plaintiffs' acceptance of the Roads Amendment which included the waiver. At that time Plaintiffs had already invested tens of millions of dollars into construction, secured a $50 million construction loan, and entered into contractual agreements with anchor tenants. (SAC ¶¶ 3, 69, 72, 113 & 118.) Plaintiffs took these steps in reliance on Defendants' previous approval, subject to Defendant's discontinuance of the Town Roads, of the final site plan for the project which included 1.854 million square feet of GLA. (*See id.* ¶¶ 4, 62 & 113.) While the conditions are certainly hardships, they do not amount to economic duress, even considering Plaintiffs' substantial investment in the property at the time of the Roads Resolution. Approval of Plaintiffs' plan had at least since 1998, been subject to Defendants' approval for the

discontinuance of the Town Roads. (*Id.* ¶¶ 62 – 65.) The conditions Defendants imposed on their approval of the discontinuance of the Town Roads were not wrongful threats but were a continuation of negotiations between Parties. *See DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578, 582 (S.D.N.Y. 1993) (A "threat to do that which one has the right to do does not constitute duress." (quoting *Gerstein v. 532 Broad Hollow Rd. Co.,* 429 N.Y.S.2d 195, 199 (N.Y. App. Div. 1st Dep't 1980)) (internal quotation marks omitted)).

However, although Plaintiffs came up light when faced with the heavy burden of showing economic duress, the Court declines to enforce the release to bar Plaintiff's facial First Amendment challenge. As discussed *supra*, Plaintiffs allege that Defendants enforced the Roads Resolution, Restrictive Covenant, and Note Z in 2014 through 2016, after the waiver of liability was entered into in 1996. The broad terms of the Roads Resolution release Defendants from liability for actions "with respect to or in connection with any action taken (as well as any claimed failure to act) up to and including the adoption of this Resolution." (Roads Resolution.) However, the language of this release only covers actions up to and including the Roads Resolution; it is not clear whether actions taken after the adoption of the Roads Resolution in 1996 are covered by the waiver. Accordingly, because waiver must be clear and because waiver of constitutional rights should not be presumed, the Court declines to enforce the waiver to bar Plaintiffs' claims.[8] *See EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at *7 n.4 (S.D.N.Y. June 18, 2018).

## C. Merits of Plaintiffs' First Amendment claims

The First Amendment, including the right to petition, is fundamental to democratic

---

[8] All of Plaintiffs' First Amendment claims can be connected to the Town Board's actions in 2014 to 2016 when it allegedly denied Plaintiffs their right to petition by continuing to enforce the Roads Resolution, the Restrictive Covenant, and Note Z.

government.  Because of the right to petition, citizens are entitled to approach the government for the redress of grievances.  This right must be carefully guarded because it is one vital medium through which citizens may participate in the government.  However, the rights secured by the First Amendment do not include the right to get one's way.  As discussed below, the First Amendment does not entitle individuals to force the government to provide their desired result.

### i. Right to petition

Plaintiffs allege that Defendants deprived them of their First Amendment right to petition the government for an expansion of the GLA in the Palisades Center.  (*See* SAC ¶ 252.) Specifically, the SAC alleges that Defendants have restricted Plaintiffs from applying to the Planning Board for approval of an expansion and that this burdens their First Amendment rights. (*Id.* ¶¶ 293 – 95.)

The First Amendment protects the right to petition the government for a redress of grievances.  U.S. Const. amend. I.  The right "to petition for a redress . . . [is] among the most precious of the liberties safeguarded by the Bill of Rights."  *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  However, the right to petition is not the right to a favorable or successful determination, and it does not ensure that "elected official will necessarily act a certain way or respond in a certain manner to requests from his constituents." *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000) (citing *Minn. State Bd. for Cmty. Coll. v. Knight*, 465 U.S. 271, 300 (1984)); *see Reardon v. Keating*, 980 F. Supp. 2d 302, 313 (D. Conn. 2013).  The right of access to the courts is part of the right to petition.  *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002).

Here, Plaintiffs fail to state a facially plausible claim that Defendants deprived them of their right to petition.  Plaintiffs do not allege that Defendants prevented them from petitioning

the government for redress, just that they were prevented from applying directly to the Planning Board for a release of the Restrictive Covenant without a favorable permissive referendum or approaching the Town Board.[9]  (SAC ¶¶ 169 & 316.)  In fact, based on the allegations in the SAC, Plaintiffs repeatedly petitioned the Town Board to lift the conditions imposed by Note Z and the Restrictive Covenant and allow for further expansion.  (SAC ¶¶ 154 & 169 – 70.)  The Town Board simply refused to release the Restrictive Covenant and Note Z unless Plaintiffs made specific concessions.  (*Id.* ¶ 170.)  While this was not the result Plaintiffs wanted, it was also not a denial of their right to petition the government.[10]  *See Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 172 (E.D.N.Y. 2009)  (dismissing the plaintiff's First Amendment right to petition claim because the objected-to regulation did not prevent the plaintiff from seeking relief from the government but actually provided the plaintiff with the opportunity to petition the government for a variance); *see also Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 575 (E.D.N.Y. 2011) (holding that the plaintiff failed to show that she was deprived of her First Amendment right to petition the government because, although the government policy made it more difficult to organize voter referenda, she remains free to advocate for her position).

Any claim that Plaintiffs were denied access to the Courts is similarly unsupported by the facts in the SAC.  The right of access to the courts "does not guarantee . . . governmental

---

[9] Plaintiffs contend that their right to petition has been violated because Defendants are preventing them from directly petitioning the Planning Board, (Pls.' Opp'n p. 4 n.5) but they gloss over the fact that they are still permitted to petition the government, specifically the Town Board, for relief and that they have in fact petitioned the Town Board. Similar to the plaintiffs in *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 172 (E.D.N.Y. 2009), Plaintiffs can still avail themselves of a process, petitioning the Town Board, to seek relief.  They simply did not like the Town's response which was to propose a release subject to specified conditions.

[10] It is unclear whether the right to petition includes the right to apply to town planning boards for site approval or building permits. *In the Matter of the Application of Hampshire Recreation, LLC v. Village of Mamaroneck*, No. 14-CV-7228(CS), 2016 WL 1181727, at *9 n.20 (S.D.N.Y. Mar. 25, 2016). For the purposes of this Opinion, granting as favorable as possible an interpretation for Plaintiffs as the nonmoving party, the Court determined that Plaintiff's request to the Town was protected under the First Amendment and that Plaintiffs were not denied that protected right.

officials may not enter agreements terminating, settling or prospectively avoiding litigation."
*Kittay v. Giuliani*, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000). Parties are free to agree to a
litigation waiver. *Miller v. N.Y. City Dep't of Educ.*, 71 F. Supp. 3d 376, 380 (S.D.N.Y. 2014);
*Berman v. Parco*, 986 F. Supp. 195, 208 (S.D.N.Y. 1997). Here, Defendants entered into an
agreement with Plaintiffs through which Plaintiffs agreed to release Defendants from liability for
their actions up to and including the enactment of the Roads Resolution. This waiver did not
prevent Plaintiffs from bringing the suit currently before the Court for alleged post-release
violations of their constitutional rights. Therefore, Plaintiffs were not denied access to the
courts. *See Mallgren v. Am. Psychiatric Ass'n*, Nos. 13-CV-2211(MKB), 13-CV-2214(MKB),
13-CV-2215(MKB), 2014 WL 978457, at *7 (E.D.N.Y. Mar. 11, 2014) (dismissing the
plaintiff's access to the courts claim because he failed to allege an actual injury, that he was
hindered from pursuing his legal claim); *Ziemba v. Armstrong*, No. 02-CV-2216(DJS)(TPS),
2004 WL 1737447, at *2 (D. Conn. July 30, 2004) (holding that because the plaintiff did not
allege that the defendants' actions "interfered with his access to the courts with respect to this
action or any other pending case filed by him," the plaintiff did not have an access to the courts
claim).

### ii.   Unconstitutional condition[11]

Plaintiffs claim that the Roads Resolution, Restrictive Covenant, and Note Z impose
unconstitutional conditions in violation of their First Amendment rights.[12] Those alleged

---

[11] Based on their reply to Plaintiffs' opposition to their motion, it appears that Defendants believe Plaintiffs assert a First Amendment retaliation claim. (Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. pp. 2 – 4, ECF No. 72.) No such claim is stated on the face of the SAC. To the extent that Plaintiffs attempted to raise such a claim in their opposition, the Court will not consider the argument because parties may not amend their pleadings through motion papers. *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018).

[12] Plaintiffs' First Amendment unconstitutional conditions claims, and Defendants' memorandum of law in support of its motion to dismiss those claims, are entangled with Fifth Amendment unconstitutional exaction claims.

unconstitutional conditions include preventing Plaintiffs from petitioning the Planning Board for an expansion to 3.05 million square feet of GLA and conditioning expansion on a favorable referendum as well as preventing Plaintiffs from suing Defendants for their actions. (*See* SAC ¶¶ 10 & 98.) However, based on the allegations in the SAC, Plaintiffs have not stated a facial unconstitutional conditions claim.

Under the unconstitutional conduction doctrine, as applied to First Amendment claims, the government may not deny a benefit to a person for a reason that infringes on a freedom protected by the First Amendment even if the government is not obligated to offer the benefit. *All. for Open Soc. Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 243 (2d Cir. 2011) (citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,* 547 U.S. 47, 59 (2006)). Essentially, the unconstitutional condition doctrine prohibits the government from doing indirectly what it cannot do directly. *U.S. v. Oliveras*, 905 F.2d 623, 628 n.8 (2d Cir. 1990). However, the doctrine does not "give rise to a constitutional claim in its own right; the condition must actually cause a violation of a substantive First Amendment right." *Id.*; *see Dolan v. City of Tigard*, 512 U.S. 374, 407 n.12 (1994) (noting that the unconstitutional conditions doctrine "has never been an overarching principle of constitutional law that operates with equal force regardless of the nature of the rights and powers in question").

The Court has already found that Defendants did not directly violate Plaintiffs' right to petition the government or the courts, see *supra* I(C)(i), and it holds that Defendants did not impose an unconstitutional condition that burdened that right. *See Emmert Indus. Corp. v. City*

---

Plaintiffs argue that the conditions imposed by Defendants amounted to exactions and unconstitutional conditions on their property rights, but this Court has already determined that such claims are time-barred. *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at *7 n.4 (S.D.N.Y. June 18, 2018). Therefore, this Court only addresses the First Amendment exaction and unconstitutional conditions claims.

*of Milwaukie*, 307 F. App'x 65, 66 – 67 (9th Cir. 2009) (holding that a litigation waiver in an agreement between a city and a private company did not amount to an unconstitutional condition). Defendants did not condition the receipt of a government benefit—purchase of the Town Roads to allow for construction of the property—on surrender of Plaintiffs' ability to petition the government or access the courts. Contrary to Plaintiff's argument, Defendants did not ask Plaintiffs to surrender their right to petition through the Roads Resolution.[13] As discussed above, under the terms of the conditions, Plaintiffs were and are still able to petition the government for an expansion and to bring constitutional claims before the court.

Any claims that the conditions amounted to exactions that violated the First Amendment also fail. Under the terms of the Roads Resolution, Plaintiffs were required to pay $1.5 million in exchange for transfer of ownership of the Town Roads from the Town to Plaintiffs. This is a contract between the parties for the sale of the Town Roads; the government may charge private entities for the purchase of government property. *See Broad Prop. v O'Hara*, 358 N.Y.S.2d 3, 4 (N. Y. App. Div. 2d Dep't 1974) (holding that the government could sell state-owned property subject to terms including consideration); *see also Cooper v. U.S. Postal Serv.*, 482 F. Supp. 2d 278, 294 (D. Conn. 2007) (noting that the government may contract with private parties). Plaintiffs also allege that when they asked the Town for a release from the Restrictive Covenant and Note Z, the Town refused to grant a release unless Plaintiffs made "millions of dollars in payments" to the Town, among other concessions. However, Plaintiffs do not allege, and the SAC does not otherwise suggest, that Plaintiffs made these payments. Although an exaction that

---

[13] Plaintiffs correctly point out that for unconstitutional condition claims, the violation of the doctrine occurs when the government makes a demand on Plaintiffs to forfeit a constitutional right. (Pls.' Opp'n pp. 5 – 6.) However, Plaintiffs still must show that the government pressured them by threatening to withhold a right they are entitled to under the First Amendment. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). As discussed in this Opinion, Plaintiffs do not state a facially plausible claim that the terms of the Roads Resolution and Note Z violated the First Amendment.

violates the First Amendment may occur where the plaintiff has been improperly required to pay the government, the plaintiff must allege that the payment to the government has already occurred. *Eastport S.S. Corp. v. United States,* 178 Ct. Cl. 599, 605 (1967), *overruled on other grounds by Claude E. Atkins Enter., Inc. v. United States,* 15 Ct. Cl. 644, 646 & n. 2 (1988); *United States v. KPMG LLP*, No. 05-CR-903(LAP), 2007 WL 541956, at *9 n.12 (S.D.N.Y. Feb. 15, 2007).

## II.  State law claims

A federal court has jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all federal claims over which it had original jurisdiction. Given that the Court has dismissed Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over any state law claims. *See James v. Correct Care Sol.*, No. 13-CV-0019(NSR), 2013 WL 5730176, at *9 (S.D.N.Y. Oct. 21, 2013) ("Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state law claims, and thus the Court declines to exercise supplemental jurisdiction over any purported state law claims.").

# CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion at ECF No. 67 and to close the case.

Dated:    May 21, 2019                          SO ORDERED:
          White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge